Applicant Regarding Replacement of Life Insurance – Florida" forms (the "Notice for ns"), one for the Pacific Life policy and the other for the Prudential policy.

32. The Notice forms provided in pertinent part:

> A decision to buy a new policy and discontinue or change an existing policy m y be a wise choice or a mistake. Get all the facts. ... Your best source for facts n the proposed policy is the proposed company and its agent. Hear from bc h before you make your decision. This way you can make sure your decision is n your best interest. If you indicate that you intend to replace or change an existi g policy, Florida regulations require notification of the company that issued t e policy. Florida regulations give you the right to receive a written Comparati e Information Form which summarizes your policy values. Indicate whether or n t you wish a Comparative Information Form from the proposed company and yo r existing insurer or insurers by placing your INTIALS in the appropriate bc x below.

W. Ward Schaumberg's initials are in the "NO" box on both Notice forms.

33. On April 11, 2005, Steve Schumacher of Wachovia Insurance and on April 12, 2005, W. Ward Schaumberg, Vice President of WBNA, signed a John Hancock "The nformed Consent" form relating to Prudential policy no. 79 720 568; no such form was prepare l for the Pacific Life policy.

34. R. Frederick Church, sent an e-mail on May 11, 2005, to James L. French's then-attorney, Kathleen Gray, requesting that the beneficiaries sign a waiver of confl ct. The e-mail provided in pertinent part:

> As you know, Mr. French has elected to purchase life insurance from Wachovi Insurance Services, Inc. Because the document is silent as to the use of a affiliate by the corporate trustee, we ask that the beneficiaries sign a waive allowing this transaction.
>
> The template for the waiver follows. Let me know if it meets with your approva If it does, I will prepare letters for the beneficiares [sic] signatures.

The template for the waiver provided in pertinent part:

> We understand that Wachovia Insurance Services is an affiliate of the trustee, an that absent our consent and direction that you use the services of Wachovi

-7-

Case 2:06-cv-00869-RTR   Filed 08/14/06   Page 1 of 8   Document 1-3

Insurance Services;[sic] the purchase of assets for the Trust through an affiliate of the trustee would be an impermissible conflict of interest, self-dealing or other breach of your fiduciary duty.

We understand that Wachovia Insurance Services will earn a commission directly as a result of the providing of this insurance to the Trust. We understand that this compensation is not waiveable by the insurance broker and that there will be no credit back to the Trust account for the value of that compensation. We further understand that the Trustee will not reduce the fees it charges for the trust services it renders to the Trust as a result of the compensation earned by its affiliate on this transaction.

We hereby waive any claim for breach of duty or self dealing arising out of the trustee's purchase of this insurance for the Trust, and we release ... the trustee from any liability based on any theory arising our of or connected to this purchase of insurance for the Trust.

A true and correct copy of the May 11, 2005, e-mail is attached to the e-mail from Kathleen Gray to James French dated May 12, 2005, marked Exhibit A, attached hereto and incorporated herein by reference.

35. Prior to the time that Wachovia advised Attorney Gray of Wachovia's need for waivers from the beneficiaries before Wachovia could proceed with a transaction with an affiliated entity, Wachovia had already submitted applications for replacement policies to John Hancock, and Wachovia had already authorized John Hancock to request surrender of the Pacific Life and Prudential policies pursuant to a 1035 exchange that was intended to benefit an affiliate.

36. By correspondence dated May 19, 2005, from Attorney Gray to Mr. Church, Gray advised that, in light of Wachovia's request for a waiver in connection with Wachovia's recommended purchase of new life insurance for the Trust #1, James L. French would be retaining an insurance consultant; and, because James L. French is not the trustee, he is not going to direct the trustee to do or not do anything with reference to the current status of the insurance policies in Trust #1.

-8-

37. Neither James L. French nor any of the plaintiffs-beneficiaries ever consented to, approved, authorized or ratified surrendering the Pacific Life and Prudential policies or effectuating the tax-free exchange identified at paragraph 29 above.

38. Neither James L. French nor any of the plaintiffs-beneficiaries ever consented to, approved, authorized, or ratified the purchase of the replacement policies from John Hancock or effectuating the tax-free exchange identified at paragraph 29 above.

39. Neither James L. French nor any of the plaintiffs-beneficiaries ever consented to, approved, authorized or ratified WBNA's purchasing replacement policies through WBNA's affiliate, Wachovia Insurance Services, Inc.

40. Wachovia Insurance Services, Inc., received commissions of $512,530 ($250,646 on policy #59-625-293 and $261,884 on policy #59-625-3001) to place the replacement policies with John Hancock, and WBNA paid the commissions from the French Family Trust as part of the new life insurance premium payment.

41. Immediately before the original policies were surrendered by WBNA, the policies had an aggregate cash surrender value of $2,258,155 (the Prudential policy had a cash surrender value of $930,972.83, and the Pacific Life policy had a cash surrender value of $1,327,182). After the replacement policies were purchased, the aggregate cash surrender value of the new John Hancock policies was approximately $1,411,710, a reduction of approximately $846,445.

42. The replacement policies from John Hancock will continue to decline in cash value at the average rate of approximately $100,000 per year until the entire cash surrender value of the John Hancock policies of approximately $1,411,710 is exhausted.

43. If the original policies had not been surrendered, the cash value of those policies would have increased at the aggregate rate of approximately $200,000 per year based upon the

Case 2:06-cv-00869-RTR   Filed 08/14/06   Page 3 of 8   Document 1-3

reduced premium option for the Pacific Life policy in the amount of $91,485 as shown on the Inforce Illustration dated January 19, 2005 that Wachovia provided and based upon the increased premium of $94,133 beginning in 2006 for the Prudential policy as shown on the Inforce Illustration dated January 18, 2005 provided by Wachovia.

44. On information and belief, WBNA knew that the original Prudential policy was scheduled to declare a dividend on or about 48 days after the policy was in fact surrendered. If the tax-free exchange of the Prudential policy had been delayed by at least 48 days, the Prudential policy would have paid a dividend of approximately $41,409. If the best interests of the Trust had been the sole consideration of WBNA as trustee, there was no compelling business or financial justification for not delaying the tax-free exchange until after the dividend was declared.

45. By failing to place the policyholder's interests first, as it pertains to the forfeited dividend in specific and as it pertains to purchase of the John Hancock policies in general, WBNA and its affiliates violated FAC § 69B-215.210.

46. Shortly after the plaintiffs-beneficiaries learned that WBNA had replaced the original policies with policies that did not advance their investment objective but, rather, benefited WBNA's affiliate, plaintiffs-beneficiaries requested that WBNA minimize the damage to the French Family Trust by reinstating the Pacific Life and Prudential policies. WBNA declined to attempt to minimize the damage to the French Family Trust.

47. On or about January 26, 2006, various representatives of Wachovia, including Michael Jones, Chief Investment Officer, Wachovia Securities; Jason Weinstein, Regional Investment Manager, Wachovia Trust Company; and Gregg Weggeman, Weggeman Consulting Group of Wachovia Securities, met with James L. French, together with plaintiffs and their

Case 2:06-cv-00869-RTR    Filed 08/14/06    Page 4 of 8    Document 1-3

attorneys, in Sheboygan County, Wisconsin, to review the status of the various investments under the management and control of the various Wachovia entities.

### FIRST CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY

48. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 – 47 hereinabove.

49. The actions and omissions alleged above on the part of WBNA constituted breaches of its fiduciary duty to the plaintiffs-beneficiaries, which breaches include but are not limited to:

   a. Causing the French Family Trust to pay a commission to its affiliate without obtaining prior written informed consent constitutes self dealing, and, on information and belief, violated the internal operating procedures of WBNA or its affiliates, which set forth Wachovia's self-declared fiduciary responsibilities. This conduct by WBNA also violated relevant federal regulations, including, but not limited to, 12 C.F.R. § 9.12(i).

   b. Not delaying the Prudential tax-free exchange until after the dividend was paid constitutes failure to follow reasonable and prudent business practices.

   c. Purchasing the John Hancock policies violated the prudent investor statute in that the purchases were not consistent with the investment objectives of either James L. French or the plaintiffs-beneficiaries of the French Family Trust.

50. Plaintiffs are entitled to recover from defendant as damages for defendant's breach of fiduciary duty:

-11-

a. The loss in cash value of the policies that were surrendered;

b. The profit made by defendant and/or its affiliates;

c. The lost dividend occasioned by defendant trustee not following reasonable and prudent business practices;

d. The loss in increased cash value that would have been realized if the Pacific Life and Prudential policies had not been surrendered when and as they were;

e. All fees that defendant or its affiliates have been paid by the French Family.

## SECOND CLAIM FOR RELIEF: §100.18

51. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 – 50 hereinabove.

52. In violation of §100.18, Wis. Stats., WBNA, directly or indirectly through its affiliate, with intent to sell, transfer, surrender or otherwise dispose of the Pacific Life and Prudential policies and with intent to directly or indirectly induce the public (i.e., to induce the beneficiaries to authorize the Trustee) to purchase the John Hancock replacement policies, as alleged above, made, published, disseminated, circulated, or placed before the public, in Wisconsin, a document, statement, and written representation relating to the comparative value of the Pacific Life and Prudential policies and the potential replacement policies from John Hancock, which document, statement and written representation contained assertions, representations, or statements of fact that were untrue, deceptive or misleading.

53. Plaintiffs suffered pecuniary loss, as alleged above, because of WBNA's violation of §100.18, Wis. Stats.

-12-

54. Pursuant to §100.18(11)(b), Wis. Stats., plaintiffs are entitled to recover the pecuniary losses alleged in paragraph 50, together with costs, including reasonable attorney fees.

WHEREFORE, plaintiffs demand judgment against defendant for their damages as will be shown to the court, together with plaintiffs' actual and reasonable attorneys' fees, costs, and expenses, pre-judgment interest at the legal rate, and such other and further relief as the court deems just and equitable.

Dated this ⎯⎯ day of May, 2006.

AXLEY BRYNELSON, LLP

*[signature]*

John C. Mitby, State Bar No. 1012621
Michael S. Anderson, State Bar No. 101001
Attorneys for Plaintiffs
2 East Mifflin Street
Post Office Box 1767
Madison, WI 53701-1767
(608) 257-5661

James O. Conway, State Bar No. 1017 60
Olsen, Kloet, Gunderson & Conway
602 North Sixth Street
Sheboygan, WI 53081

F:\EAFDATA\31155578614001593362.DOC



**CORPORATION SERVICE COMPANY**

## Notice of Service of Process

JUB / ALL
Transmittal Number: 4641341
Date Processed: 07/21/2006

| | |
|---|---|
| Primary Contact: | Ms. Joyce Camp<br>Wachovia Corporation<br>301 S. College St, NC0630<br>One Wachovia Center<br>Charlotte, NC 28288-0630 |
| Copy of transmittal only sent to: | Elizabeth Gass |
| Entity: | Wachovia Bank, National Association<br>Entity ID Number 2016645 |
| Entity Served: | Wachovia Bank, National Association |
| Title of Action: | Brian French vs. Wachovia Bank, National Association |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court: | Sheboygan County Circuit Court, Wisconsin |
| Case Number: | 06 CV 0555 |
| Jurisdiction Served: | North Carolina |
| Date Served on CSC: | 07/21/2006 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | John C. Mitby<br>(608) 257-5661 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

To avoid potential delay, please do not send your response to CSC
2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com